## Roop's Estate.

*Wills—Construction—General intent—Technical terms.*

Testator expressed as his primary purpose in creating a trust his desire to benefit the W. family. He then directed the trustee to pay the net income of the fund to W.'s mother and sisters and to the survivor or survivors of them so long as any one of them might be living, and upon the death of all of them to "pay the principal of the said sum to W.'s daughter, A. D. W., if she be living, or to her issue if she be deceased, and in default of issue to such person or persons as would then take the same from and under said W. if he had lived until then and then died intestate." W.'s daughter, A. D. W., died Feb. 12, 1875, some three years after the decedent, without issue, leaving a will, by which she bequeathed her property to persons not of the W. family. On the death of the last survivor of decedent's sisters, the trustee filed an account. At the audit it was contended that A. D. W. took a vested remainder and the fund passed to her legatees: *Held,* that the case did not turn on technical rules of construction, but upon the main purpose to benefit the W. family, and the fund passed to those persons who would have been W.'s next of kin had he died at the death of the last surviving *cestui que trust.*

Exceptions to adjudication. O. C. Phila. Co., July T., 1879, No. 82.

Samuel W. Roop, testator, died in 1867, leaving a will, the controlling clause of which was as follows:

"The principal sum of Eight thousand dollars which stands in my private locked account book to the credit of 'The Washington Fund' consists of a balance of my commissions as executor of the estate of my late partner and

Roop's Estate.

friend, Warner F. Washington, the residue of said commissions having been already assigned in trust for his daughter. This balance of commissions is not set apart from the rest of my estate or invested, but I have always since I received it intended to appropriate it, principal and income, for the benefit of Mr. Washington's family. So long as I live I can do this from time to time as I may deem best. Immediately upon and after my decease I direct my executors to take from my general assets or estate a sum equal to the balance of the said 'Washington Fund' at that time, whatever it may be, and pay it to the Pennsylvania Company for Insurances on Lives and Granting Annuities, to be received and held by them upon the following trusts, viz.: In trust to divide or pay the net income of the same between Mrs. E. S. Washington, the mother, and Mary M., Rebecca C. and Louisa Washington, sisters of said Warner F. Washington, the survivor or survivors of them, so long as any one of them may be living; and upon the death of all of them, to pay the principal of the said sum to Anna Dorsey Washington, daughter of said Warner F. Washington, if she be living, or her issue, if she be deceased, and in default of issue to such person or persons as would then take the same from and under the said Warner F. Washington, if he had lived until then and then died intestate. I expressly direct that this sum shall in no event be charged upon my estate or prevent in any wise the complete settlement thereof."

Anna Dorsey Washington died Feb. 12, 1875, in the lifetime of her sisters, unmarried and without issue, leaving a will, by which she bequeathed the residue of her estate to persons not of the Washington family. At the audit of the account of the trustee, filed upon the death of the last surviving *cestui que trust*, April 16, 1921, it was contended that the said Anna Dorsey Washington took a vested remainder under the will which passed to her legatees. The auditing judge (Thompson, J.) held that it was the intention of the testator that no interest should vest in any particular individual during the lifetime of the *cestui que trust*, and that such intention must be given effect without regard to technical rules, citing Mulliken v. Earnshaw, 209 Pa. 226. He, therefore, awarded the fund to those persons who would have been entitled to the estate of Warner F. Washington had he died at the death of the last surviving *cestui que trust*. The legatees under Anna Dorsey Washington's will excepted.

*James C. Sellers*, for exceptions.

*George J. Hanhauser* and *R. M. Remick (Saul, Ewing, Remick & Saul* with them), contra.

LAMORELLE, P. J., Jan. 19, 1922.—The auditing judge in a concise adjudication has analyzed the terms and provisions of the will, and were it not for the earnest argument and really meritorious briefs presented on behalf of exceptants, we might well dismiss the exceptions without further comment. The argument of counsel, however, deserves further consideration, and we have devoted some time to a thorough examination of the record, and in an endeavor to see the will from the viewpoint of the exceptants. Briefly stated, the testator, after providing for his relatives, calls attention in his will to the fact that a principal sum of $8000, representing a balance of his commissions as the executor of the will of his "late partner and friend, Warner F. Washington," stands to his credit as the "Washington Fund" in his locked ledger; that such balance, though never so invested, is what remains of such commissions, all else having theretofore been assigned in trust for the benefit of Mr. Washington's daughter; that his reason for not assigning all was that in his lifetime he could distribute it as seemed best to him "for the benefit of

1 D. & C.

Roop's Estate.

Mr. Washington's family," and, finally, that since the receipt of the commissions it has always been his purpose to so appropriate them all. This succinct recital, paraphrased from the will, no testimony having been offered, clearly indicates the dominating purpose. The Washington family is to be refunded that fund to which the testator was of right entitled, and which he had received; he, however, was the one to direct and control the distribution, but it was *that family*, in such manner as he should determine, who were to be the recipients of his bounty.

Having this purpose in mind, we now take up the language of his gift, premising our discussion that testator's intention is to be found in the words used by him, but never losing sight of the pole star set for our guidance. And, first, we must not overlook nor minimize two significant clauses: his wife is to be preferred over all legatees; her bequest is not to abate, though all others may, but no part of the "Washington Fund" is to be taken or used for any purpose other than as provided by the will.

His executors are directed to set aside a sum equivalent to that shown by the entry in his locked ledger and to pay it to the present accountant, which sum is to be received by the accountant and held in trust to pay the net income in equal shares to the mother and the three sisters of Warner F. Washington, by name, and the survivor, so long as any of the four are alive. These are the first objects of testator's consideration. When they are all deceased, Mr. Washington's daughter is to receive the *corpus*. She is the one whom testator has already remembered in his lifetime. But her taking is contingent on her being alive (with alternative gift to her children) when the trust shall terminate. Why lose oneself in the mazes of contingent and vested remainders, and split hairs over what has been said and what has been decided in a long line of contradictory so-called precedents? It has been said recently—and well said—by the Chief Justice, in Long's Estate, 270 Pa. 487, that no will is really a binding authority as decisive of another will; and this, though similar language be used, may be a guide; no more. Single tracking frequently leads to disaster. The surrounding circumstances of each particular case must be examined with care, and testator's underlying theory, as shown in the will or when permissible by oral testimony, thus legally worked out. Here testator says: "and upon the death of all of them (the four *cestuis que trust*), to pay the principal or capital of said sum to Anna Dorsey Washington, daughter of said Warner F. Washington, if she should be living, or her issue, if she should be deceased." The time of payment was fixed as of the date of the death of the survivor of the four *cestuis que trust*. The daughter was to be the recipient, *if living* at the time the trust fell in. If, however, she was not living, which was the case, her descendants were to take. She died in the year 1875, without issue, some few years after testator; the exceptants are residuary legatees under her will; they form no part of the Washington family.

Testator was careful to carry out to the uttermost his desire to benefit the Washington family. Note the phrase with reference to Anna Dorsey Washington, "should she be living." Can this mean anything else than if she should then, *i. e.*, at the time fixed for payment to her, be in existence? Again, note the alternative gift to her issue, "if she should be deceased." And, finally, note the further gift in the alternative, "and, in default of issue, to pay to others." Connote the gift to those who would *then* take the same, had Warner F. Washington lived till *then* and *then* died intestate? Could words more accurately express testator's thought as to this ultimate distribution of his estate among the members of the Washington family? No one, not even the

daughter, Anna Dorsey Washington, could divert the fund by will. In short, the gift and the payment were to be treated as synchronized. The auditing judge could have done nothing other than to award the fund to the next of kin of Warner F. Washington as of the date of the death of the survivor of the four *cestuis que trust*, without violating both testator's purpose and his manifestly expressed intent. A different award would have diverted the fund from the Washington family, the one thing testator did not intend, even to the extent of depriving his own wife of any participation therein.

All exceptions are dismissed and the adjudication is confirmed absolutely.